IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CAROLINE L. JUKER,

        Plaintiff,

    v.

MICHAEL J. ASTRUE,[1]
Commissioner of Social Security,

        Defendant.

_____

Civ. No. 06-960-AA

OPINION AND ORDER

AIKEN, Judge:

    Plaintiff Caroline Juker ("Juker"), brings this action pursuant to the Social Security Act, 42 USC § 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Disability Insurance Benefits. For

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. He is substituted as the defendant in this action pursuant to Fed. R. Civ. P. 25(d)(1) and 20 U.S.C. § 405(g).

1 - OPINION AND ORDER

the reasons set forth below, the decision of the Commissioner is reversed and remanded consistent with this opinion.

## PROCEDURAL BACKGROUND

Juker filed an application for benefits on November 4, 2003, alleging disability since October 10, 2002, due to depression, and fibromyalgia. Her application was denied initially and upon reconsideration. On August 17, 2005, a hearing was held before an Administrative Law Judge ("ALJ"). In a decision dated October 28, 2005, the ALJ found Juker was not entitled to benefits. The Appeal's Council denied Juker's request for review, making the ALJ's decision the final decision of the Commissioner. Juker now seeks judicial review of the Commissioner's decision.

## STANDARDS

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied*, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's

decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## DISABILITY ANALYSIS

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. At steps one through four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At step five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id.* Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999):

Step One. The Commissioner determines whether claimant is engaged in substantial gainful activity. If so, claimant is not disabled. If claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate claimant's case under step two. 20 C.F.R. §§ 404.1520(b), 416.920(b). In this case, the ALJ found Juker had not engaged in substantial gainful activity since the alleged onset of disability on November 3, 2001. This finding is not in dispute.

Step Two. The Commissioner determines whether claimant has one or more severe impairments. If not, claimant is not disabled. If claimant has a severe impairment, the Commissioner proceeds to evaluate claimant's case under step three. 20 C.F.R. §§ 404.1520(c), 416.920(c). At step two, the ALJ found Juker had the medically determinable severe impairments of fibromyalgia and an anxiety disorder. This finding is in dispute.

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether claimant's impairment "meets or equals" one of the

impairments listed in the Social Security Administration ("SSA") regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, claimant is disabled. If claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of claimant's case proceeds under step four. 20 C.F.R. §§ 404.1520(d), 416.920(d). At step three, the ALJ found that Juker's impairments did not meet or medically equal a listed impairment. This finding is in dispute.

<u>Step Four</u>. The Commissioner determines whether claimant is able to perform work he or she has done in the past. If so, claimant is not disabled. If claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of claimant's case proceeds under step five. 20 C.F.R. §§ 404.1520(e), 416.920(e). In this case, the ALJ determined that Juker retained the residual functional capacity ("RFC") to perform a narrow range of light work, with occasional crawling, climbing ropes, ladders, or scaffolds, and involving up to three steps. Accordingly, the ALJ determined that Juker was unable to perform her past relevant work as an accounting clerk, accounts payable clerk, accounts payable specialist, accounts receivable specialist, accounts receivable coordinator, and billing clerk.

<u>Step Five</u>. The Commissioner determines whether claimant is able to do any other work. If not, claimant is disabled. If the Commissioner finds claimant is able to do other work, the Commissioner must show a significant number of jobs exist in the national economy that claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert ("VE") or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates a significant number of jobs exist in the national economy that claimant can do, claimant is not disabled. If the Commissioner does not meet this burden, claimant is disabled. 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). At step five the ALJ

found that Juker could perform other work existing in the national economy, including general clerk (sedentary, semi-skilled) and file clerk (light, semi-skilled). As a result, the ALJ found Juker not disabled within the meaning of the Act. This finding is in dispute.

## FACTUAL BACKGROUND

Juker was born in 1951, and was 52 years old at the time of the alleged onset of disability. She graduated from college. Tr. 62.[2]

The medical records in this case accurately set out Juker's medical history as it relates to her claim for benefits. The court has carefully reviewed the extensive medical record, and the parties are familiar with it. Accordingly, the details of those medical records will be set out below only as they are relevant to the issues before the court.

## DISCUSSION

Juker contends that the ALJ erred by: (1) failing to identify as "severe" at step two several impairments; (2) improperly rejecting Juker's symptom testimony at steps two and five; (3) improperly rejecting the opinion of treating physicians at steps three and five; (4) improperly rejecting third party testimony at steps three and five; (5) failing to determine whether combined conditions met or equaled a Listing at step three; and (6) posing an inadequate vocational hypothetical question.

I.  Severity of Impairments at Step Two

At step two, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. *Bowen v. Yuckert,* 482 U.S. 137, 140-41 (1987). The Social Security

---

[2] Citations are to the page(s) indicated in the official transcript of the record filed with the Commissioner's Answer.

 5  - OPINION AND ORDER

Regulations and Rulings, as well as case law applying them, discuss the step two severity determination in terms of what is "not severe." According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's ] physical ability to do basic work activities." 20 C.F.R. § 404.1521(a). Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." 20 C.F.R. § 404.1521(b).

The step two inquiry is a *de minimis* screening device to dispose of groundless claims. *Yuckert,* 482 U.S. at 153-54. An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work." *See* SSR 85-28; *Yuckert v. Bowen,* 841 F.2d 303, 306 (9th Cir. 1988) (adopting SSR 85-28). A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, and cannot be established on the basis of a claimant's symptoms alone. 20 C.F.R. § 404.1508.

The ALJ properly determined that Juker had severe impairments at step two and continued the analysis. Any error in failing to identify other limitations as "severe" at step two is therefore harmless.

II. Combination of Impairments at Step Three

Juker contends that the ALJ erred by failing to consider whether her impairments, in combination, met or equaled in severity the criteria of an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If a claimant has an impairment, or a combination of impairments, that matches or is substantially equivalent to an impairment in the Listing of Impairments, the claimant is disabled *per se.* However, Juker does not specify which of the many

listed impairments were equal in severity to her impairments, and this court declines to do that research.

III. Opinions of the Treating and Examining Physicians

Juker contends that the ALJ erred by failing fully to credit the opinions of Stephen Stolzberg, M.D., Christopher Calawa, M.D., and Kevin N. Probst, N.P.

If a treating physician's medical opinion is supported by medically acceptable diagnostic techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Holohan v. Massanari,* 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(d)(2). In general, the opinion of specialists concerning matters relating to their specialty are entitled to more weight than the opinions of nonspecialists. *Id.;* § 404.1527(d)(5). An ALJ may reject the uncontradicted medical opinion of a treating or examining physician only for "clear and convincing" reasons supported by substantial evidence in the record. *Id.* at 1202 (citing *Reddick v. Chater,* 157 F.3d 715, 725 (9th Cir. 1998)). If the treating physician's medical opinion is inconsistent with other substantial evidence in the record, treating source medical opinions are still entitled to deference and must be weighted using all the factors provided in 20 C.F.R. 404.1527. *Id. (*citing SSR 96-2p). An ALJ may rely on the medical opinion of a non-treating doctor instead of the contrary opinion of a treating doctor only if she provides "specific and legitimate" reasons supported by substantial evidence in the record. *Id.*

The ALJ correctly notes that the ultimate issue of disability is reserved to the Commissioner. 20 C.F.R. § 404.1527(e). The physician's opinion must be considered in light of (l) the length of the relationship; (2) the kinds and extent of examinations and tests performed; (3) the supportability of the opinion by medical signs; (4) the consistency of the opinion with the record as a whole; (5)

whether the source of the opinion is a specialist in the relevant area; and (6) the extent to which the source is familiar with other information in the case record. 20 C.F.R. § 404.1527.

    A. Stephen Stolzberg, M.D.

Dr. Stolzberg is a psychiatrist. He performed a mental health evaluation of Juker on August 20, 2003. Tr. 133-36. Dr. Stolzberg diagnosed Dysthymic disorder, delusional disorder, somatic type, and personality disorder NOS, and assessed a Global Assessment of Functioning[3] ("GAF") score of 35. Dr. Stolzberg prescribed Paxil, counseling, and regular activities and exercise. Tr. 135.

The ALJ summarized Dr. Stolzberg's report and opinion. Tr. 21-22. He stated :

> I have also reviewed Dr. Stolzberg's report, as well as Ms. Hooks' evaluation, of claimant's complaints of mental disorders. They both appear to have based their opinions on her subjective complaints. The GAF ratings they have assigned to the claimant, 35 and 45 respectively, are inconsistent with the evidence and the claimant's own statement regarding her activities of daily living. Significantly, no other physician in the record has reported Mrs. Slama is disabled from performing full-time work by her physical and/or mental impairments.

Tr. 26.

Dr. Stolzberg's report is based on Juker's subjective complaints, which is a valid reason to give it less weight. However, this is balanced by the fact that Dr. Stolzberg is a psychiatrist, and as

---

[3] The GAF scale is a tool for "reporting the clinician's judgment of the individual's overall level of functioning." American Psychiatric Ass'n., Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. 2000). It is essentially a scale of zero to 100 in which the clinician considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness," not including impairments in functioning due to physical or environmental limitations. *Id.* at 34. A GAF score between 31 and 40 indicates "Some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) OR major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood (e.g., depressed man avoids friends, neglects family, and is unable to work; child frequently beats up younger children, is defiant at home, and is failing at school). A GAF score between 41 and 50 indicates "Serious symptoms (e.g. suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job)." *Id.* at 34.

a specialist his opinion is entitled to greater weight than the opinion of a non-specialist. Dr. Stolzberg's assessment is consistent with Ms. Hooks' diagnosis and opinion, in that the latter's assessment of a GAF score of 45, though less limiting than Stolzberg's GAF score of 35, still indicates a serious impairment in occupational functioning and the inability to keep a job.

The ALJ's assertion that no other physician has opined that Juker is disabled is in error. Christopher Calawa, M.D., examined Juker in November 2004. He noted that Juker's fibromyalgia was controlled "fairly well" on morphine and vicodin, and stated:

> Was started on zoloft in 1994 so depression dates back til then. Asked by pt to sign for for [sic] government subsidised housing considering her disabled. She has not worked in 2 yrs except for 2 weeks this summer where she states that she tried, but was unable to hold down temp work due to inability to concentrate and difficulty moving around due to her chronic conditions (depression, fibromyalgia). has had mult treatments for fibromyalgia and is felt to probably be on the best regimen at this time by recent rheum visit. Was on prozac for 4 yrs and then on paxil for the last 2 yrs. However, despite recently increasing paxil to 80mg qd 2 wks ago has noted little relief and is still scoring 27 on a normal depression scale of 1-10 w/a dx of MDD. Therefore, would qualify for houring [sic] authority diabled [sic] status by virtual [sic] of disabling mental illness (depression, inability to concentrate) for > 12 mo with indefinite future disability.
>
> . . .
>
> Depression diagnostic testing reveals a depression score of 27 on a normal range of 0-10, anxiety score of 27 of a normal range of 1-10, PTSD score of 4 on a normal range of 0-2, and somatization score of 15 on a normal range of 0-11. This is assessed to meet criteria for major depressive episode and generalized anxiety disorder, as well as likely posttraumatic stress disorder. Patient may be prone to somatization.

Tr. 182, 188.

The ALJ's determination to disregard the opinion of Dr. Stolzberg in favor of the opinion of the non-examining Disability Determination Services ("DDS") doctors is not supported by specific and legitimate reasons supported by substantial evidence. Moreover, one of the DDS doctors, Frank

Lahman, Ph.D., diagnosed affective and personality disorders, with moderate difficulties in maintaining social functioning and in concentration, persistence, or pace, but inconsistently noted that "[F]ull weight given to Dr. Stolzberg, MD w/ psych specialty." Tr. 152–54. The ALJ erred by failing properly to credit the opinion of Dr. Stolzberg.

### B.  Christopher Calawa, M.D.

Dr. Calawa's opinion is set out above.  As to that opinion, the ALJ stated:

> A note from [Dr.] Calawa . . . indicates claimant had tried working for two weeks that summer, but was unable [to] continue working due to poor concentration and difficulty moving around secondary to fibromyalgia and depression.  Dr. Calawa noted the claimant's history of treatment for fibromyalgia, and indicated she was probably on the best possible treatment regimen at the present time.  On the other hand, despite increasing her dosage of Paxil to 80 mg, the claimant indicated she was continuing to experience depression.

Tr. 23.

Actually, Dr. Calawa's opinion regarding Juker's depression was not based on Juker's reports, but on the Shedler QPD Panel for diagnosis of depression.  Tr. 183-85.  Dr. Calawa's opinion is consistent with the opinions of Dr. Stoltzberg and Ms. Hooks.  Therefore, I find that the ALJ's rejection of Dr. Calawa's assessment of Juker's limitations is not supported by substantial and legitimate or clear and convincing reasons.

### C.  Kevin Probst, N.P.

Dr. Probst found 18 of 18 fibromyalgia tender points, but no sign of degenerative arthritis and normal range of motion in all peripheral joints. Tr. 195-98. The ALJ found that "the medical evidence reveals she has retained the physical and mental capacities to sustain a range of light work activity." Tr. 26. The ALJ's determination with respect to Juker's physical capacity is supported by substantial evidence.  As set out above, the ALJ's determination with respect to Juker's mental

capacity to sustain work is not supported by substantial evidence.

IV. <u>Remand For Further Proceedings</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 1172, 1178 (9th Cir.), *cert. denied,* 531 U.S. 1038 (2000). The court's decision turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is not sufficient to support the Commissioner's decision. *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th Cir. 1989).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman v. Apfel,* 211 F.3d at 1178. Under this test, the court should grant an immediate award of benefits when:

> (l) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *See id.* at 1178 n.2.

If the court credits as true the diagnoses and findings of the treating and examining physicians, it is clear that Juker is unable to sustain employment. The court, therefore concludes this matter should not be remanded for further proceedings. *See Schneider v. Comm'r.* 223 F.3d 968 (9th Cir. 2000). Accordingly, the court remands this matter for the purpose of permitting the Commissioner to calculate and to award benefits to Juker.

## **CONCLUSION**

For these reasons, the court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 U.S.C. § 405(g) for the calculation and award of benefits. IT IS SO ORDERED.

Dated this __4__ day of June, 2007.

                                    /s/ Ann Aiken
                                      ANN AIKEN
                            United States District Judge